# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Oct 23, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
 ) Case No.  24  MJ  229
Records and information associated with the cellular telephone assigned )
cell phone number 414-552-0597 ("Target Account 1").  The information is )
stored at premises controlled by Verizon ("PROVIDER"), a wireless )
telephone service provider headquartered at Bedminster, New Jersey. )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A1 (Verizon)

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1951(a) | Hobbs Act Robbery |
| 18 U.S.C. 2113(a) | Bank Robbery |

The application is based on these facts:
Please see affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ian Byrne
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone  *(specify reliable electronic means)*.

Date: 10/23/2024

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin    The Honorable William Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A
# AN APPLICATION FOR A SEARCH WARRANT

I, Ian Byrne, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with the following cell phone numbers: 414-552-0597 (hereinafter "Target Account 1"), and of 414-477-5903 (hereinafter "Target Account 2"). The information for Target Account 1 is stored at premises controlled by Verizon ("PROVIDER"), a wireless telephone service provider headquartered at Bedminster, New Jersey. The information for Target Account 2 is stored at premises controlled by AT&T ("PROVIDER"), a wireless telephone service provider headquartered at North Palm Beach, Florida. The information to be searched is described in the following paragraphs and in Attachment A1 and A2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon and AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since December 2021. Prior to my employment with the FBI, I was an active-duty U.S. Army soldier for approximately nine years. I am currently assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including violent and threatening criminal matters defined under Title 18 of the United States Code. I have been trained in a variety of investigative matters to include bank robberies, armed carjackings, threatening communication, and Hobbs Act robberies. I have also been trained in a variety of legal matters, including the topics of Fourth

Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, searches, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why criminal actors typically conduct various aspects of their criminal activities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951(a), Hobbs Act robbery, and 18 U.S.C. §2113(a), Bank Robbery, have been committed by known and unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## SUMMARY OF PROBABLE CAUSE

### August 18, 2024 – Family Dollar Robbery

1. Affiant has reviewed West Milwaukee Police Department reports related to the investigation of an armed robbery which occurred on August 18, 2024. The reports of Officer Anastasi reflect that they conducted an interview of Victim 1 (A.Q-R., DOB XX/XX/1994) who stated that on August 18, 2024, at approximately 1:00pm, they were working as a cashier at the Family Dollar store, located at 4202 W. Greenfield Avenue, West Milwaukee, WI 53215 when the store was robbed by a suspect with a gun. Victim 1 stated that the suspect placed merchandise onto the counter and stated that he needed money for a funeral because his brother died. The suspect then stated "give me everything" in English then repeated the same phrase in Spanish. Victim 1

observed the suspect holding what looked to be a black firearm inside a white purse. The suspect stated, "you wanna get shot, you want to get killed?". The suspect took $240.35 in US currency from the register and fled. Victim 1 described the suspect as wearing what appeared to be a nun outfit/costume of black clothing with a white mask and carrying a white purse.

### August 22, 2024 – Educator's Credit Union Robbery

2. Affiant has further reviewed the police reports of Officer Doonan which reflect that on August 22, 2024, at 1:24pm, Greenfield Police Officers were dispatched to the Educator's Credit Union, located at 4000 W. Loomis Road, Greenfield, WI, for a report of an armed robbery.

3. Officer Doonan reports that they responded to the bank and spoke with two bank tellers who were both victims of the robbery, identified as Victim 2 (H.T., DOB XX/XX/2006) and Victim 3 (L.L., DOB XX/XX/1956). Officer Doonan reports that according to the victims, the suspect approached them and declared that he had a bomb and demanded the money from the cash drawers. The suspect produced a note which said something about his "brother just died." Victim 2 saw something red flashing in the suspect's hand and believed it was a bomb. The suspect obtained a total of $1,301 in U.S. currency.

4. Detective Beal reports they personally observed surveillance footage of the incident, which was provided by the bank Regional Director (P.B., DOB XX/XX/1982). That video showed the suspect, described as a black male with a heavy build, weighing approximately 220-260 pounds, and measuring approximately 6'00" – 6'02" tall. The suspect also had red colored dread locks. The suspect was carrying a black case with silver trim, a black and white striped bag, and possibly a black fanny pack style bag.

5. Detective Beal reports that video surveillance from the bank exterior on the north side of the bank showed the suspect arrive at the bank on a red and black moped.

6. Officer Doonan reports that they reviewed additional close-up photographs were taken of the suspect and moped by a customer (D.P., DOB XX/XX/1961), after the robbery, as the suspect was leaving the parking lot. Based on the review of those photos, the suspect vehicle was further identified as a Yamaha, with two distinct stickers on the front, one yellow colored sticker with the word "EQUINOX", and the second being green and white with the number "652". A pink water bottle/thermos was also visible in the cup holder. The suspect was further described as wearing an outfit giving the appearance of a nun, with a rosary type necklace, black head covering, white facemask, black sweatpants, a black curtain of some sort with metallic grommets being worn, and white shoes with distinct spikes on the back of the shoes at the ankle area.

### Identification and arrest of Danely PEREZ-PICA

7. Affiant has reviewed the reports of Officer Torres which reflect that on August 22, 2024, after the Educator's Credit Union robbery, the Milwaukee Police Department received an anonymous tip from an individual who stated that he was with a guy who told him that he committed the robbery at the bank. The anonymous tipster identified the suspect as Danely PEREZ-PICA, DOB XX/XX/1995. The tipster also identified the residence where PEREZ-PICA was at as 625 W Hayes Avenue, Milwaukee, WI.

8. Officer Torres further reports that Milwaukee Police Officers responded to that residence and observed the moped that was used in the robbery, parked at 551 W. Hayes Avenue, Milwaukee, WI. The Officers watched both the moped and the residence, and they observed the suspect with red dreadlocks, identified as PEREZ-PICA, freely walk in and out of the residence numerous times.

9. Officer Cabral reports that Milwaukee Police Officers observed PEREZ-PICA walk out of the residence and get into a vehicle identified as a black 2011 Jeep Grand Cherokee

SUV, with a vehicle identification number (VIN) of 1J4RR4GG4BC551275. Around 4:40 PM, Milwaukee Police Officers attempted to perform a traffic stop on that vehicle. They had a brief initial encounter with PEREZ-PICA and his passenger, however shortly thereafter the vehicle fled from police and crashed near 1500 W. Windlake Avenue, Milwaukee, WI. PEREZ-PICA was the driver and fled on foot after the crash, though he was subsequently captured a short distance away by police. Also in the vehicle at the time of the traffic stop was a passenger, seated in the front passenger seat, who identified himself during the initial encounter with law enforcement as Alex MORENO, DOB XX/XX/1981. MORENO fled on foot following the pursuit and was not apprehended.

10. Detective Chic reports that the Jeep had a unique sticker on the gas cap door depicting an orange stick figure and a fuel gauge. Detective Beal reports that after executing a search warrant on the Jeep, evidence was recovered from inside the vehicle, from the Educator's Credit Union robbery, which included the black and white striped bag, as well as the black and silver case. That vehicle was subsequently towed from the scene to the City of Milwaukee Impound/Tow Lot, located at 3811 W. Lincoln Avenue, Milwaukee, WI, with an assigned Tow Number of 2472320.

11. Officer Cabral reports that after PEREZ-PICA was arrested, Milwaukee Police Officers determined that the moped that was parked at 551 W. Hayes Avenue was the same moped that was used in the Educator's Credit Union robbery, based on the same unique yellow "EQUINOX" and green and white "652" stickers on the moped. That moped was identified as a 2004 red and black Yamaha Moped, with a vehicle identification number (VIN) of LPRSA20A34A409405. That vehicle was subsequently towed from the scene to the City of

Milwaukee Impound/Tow Lot, located at 3811 W. Lincoln Avenue, Milwaukee, WI, with an assigned Tow Number of 2472334.

12. Detective Beal reports that the pink water bottle/thermos from the suspect moped at the time of the robbery was observed in plain view by officers on the back porch of the residence.

13. Affiant has reviewed the reports of Detective Beal which reflect that Greenfield Police executed a state search warrant on August 22, 2024, for the residence of 625 W. Hayes Avenue, Milwaukee, WI. Evidence was recovered from the residence to include a white cloth/face covering, and sweatpants which were believed to be some of the clothing worn by the suspect at one or both of the robberies.

14. Affiant has reviewed the reports of Detective Beal which reflect that on August 27, 2024, Greenfield Police also executed a state search warrant on the Jeep Grand Cherokee and Yamaha moped. Evidence was recovered from the Jeep including a black head covering believed to be worn by the suspect, a black and white striped handbag, and a black and silver storage case that the suspect had in his possession at the time of the Educator's Credit Union robbery. Furthermore, a black Samsung cell phone in a clear case was recovered from the floor in front of the Jeep's driver's seat. The phone is in GFPD evidence under property #24-001914-2, bearing IMEI: 355134280136068; S/N: R9TTC0G6N5P.

15. Officer Cabral reports that after video canvassing the area around where the Moped was recovered, he viewed surveillance footage from an anonymous citizen residing on the 2400 block of S. 5th Place, Milwaukee, WI. The footage showed that on August 22, 2024, at approximately 1:42pm, an individual, identified by Officer Cabral as being Melvin RODRIGUEZ-QUINONEZ, DOB: XX/XX/1979, exited the front passenger seat of a vehicle which was consistent in appearance with the Jeep described above. RODRIGUEZ-QUINONEZ carried what

appeared to be a pair of white shoes and proceeded to throw them in a garbage can located in the vicinity of 2341 S. Chase Avenue, Milwaukee, WI. Officer Cabral reports that officers then responded to that garbage can and located a pair of white shoes that are believed to be the same pair of white shoes with the spikes at the back of the shoes that were worn by the suspect during the Educator's Credit Union robbery. Those shoes were photographed and taken into Greenfield Police Evidence under property #24-001878.

16. Detective Chic reviewed surveillance footage screenshots of the suspects from the Family Dollar and Educator Credit Union robberies and determined that it appears to be the same suspect in both, wearing the same white face covering, black head covering, and rosary type necklace.

17. After PEREZ-PICA was arrested following the pursuit of the Jeep, Detective Chic reviewed various surveillance cameras from around the Family Dollar store at the time of that robbery. Detective Chic determined that the Jeep was in the area of the Family Dollar store at the time of that robbery. The surveillance cameras showed that it was the same Jeep with the unique sticker on the gas cap door depicting an orange stick figure and a fuel gauge.

18. Affiant has reviewed the reports of Detective Beal that reflect that Probation and Parole Officer Baptiste provided the phone number, 414-552-0597 as the phone number in her records for PEREZ-PICA. Probation and Parole Officer Baptiste also provided the phone number in her records for PEREZ-PICA's girlfriend, "Lulu" as 414-520-6834. After searching a database, Detective Beal states that it was determined that 414-520-6834 was listed to Heather Rvalle VALLE-ESPARZA, DOB: XX/XX/1984. Records checks further show that Valle-Esparza lives at 4XXX W. Tesch Avenue, Greenfield, WI. This address is approximately 1.1 miles away, and just a four-minute drive to Educator's Credit Union.

19. It should be noted that according to Officer Boyd's report, witness W.R., DOB: XX/XX/1976, stated that the Jeep belonged to VALLE-ESPARZA. According to witness K.A., DOB: XX/XX/1983, PEREZ-PICA also drove VALLE-ESPARZA to work in the Jeep earlier that morning on August 22, 2024.

5. Detective Beal reports that Greenfield Police conducted a check of the SIM card of the black Samsung phone that was recovered from the Jeep and currently in GFPD evidence. The check identified a phone number of 414-477-5903. That phone number listed to K.S. (DOB: XX/XX/1989). Greenfield Police contacted K.S., who reported that the Samsung phone did not belong to her. However, her daughter had an iPhone that was stolen approximately 2-3 years ago. Greenfield Police then inserted the SIM card back into the black Samsung and called 414-477-5903. That number successfully called the black Samsung phone.

6. Affiant has conducted records checks and determined that 414-552-0597 ("Target Account 1") is a Verizon number and that 414-477-5903 ("Target Account 2") is an AT&T number.

7. It is common for cell phones to be used in robbery incidents, often between co-actors or to otherwise assist in the facilitation of the crime(s). In this instance, there are multiple different locations separated by sufficient time and distance that can be associated with the suspects in the above-described incidents. If common phone numbers can be developed between multiple incidents, this could lead to the identification of one or more of the suspects.

8. Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

9. Based on my training and experience, I believe that there are reasonable grounds to believe that historical call detail records for Target Account 1 and Target Account 2, for the period from August 1, 2024, through August 22, 2024, are relevant and material to the ongoing investigation. Among other things, law enforcement officers can use historical call detail records to analyze the past use of Target Account 1 and Target Account 2 and thereby obtain information about the phone user's identity, including subjects' associates, potential co-conspirators, and activities, as well as patterns of behavior. In particular, information about the past use of Target Account 1 and Target Account 2 is likely to enable the government, by matching call details with the cell site information discussed below, to determine PEREZ-PICA's whereabouts or his possible contact with others, leading up to, and following, the Subject Offenses.

10. In my training and experience, I have learned that Verizon and AT&T are companies that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

11. Based on my training and experience, I know that Verizon and AT&T can collect cell-site data about Target Account 1. I also know that wireless providers such as Verizon and AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

12. Based on my training and experience, I know that wireless providers such as Verizon and AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon and AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Account's user or users and may assist in the identification of co-conspirators and/or victims.

## ATTACHMENT A1 (Verizon)

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned cell phone number 414-552-0597 ("Target Account 1"). The information is stored at premises controlled by Verizon ("PROVIDER"), a wireless telephone service provider headquartered at Bedminster, New Jersey.

## ATTACHMENT A2 (AT&T)

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned cell phone number 414-477-5903 (hereinafter "Target Account 2"). The information is stored at premises controlled by AT&T ("PROVIDER"), a wireless telephone service provider headquartered at North Palm Beach, Florida.

# ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Accounts listed in Attachment A for the time period from **August 1, 2024, beginning at 12:00 am CST through August 22, 2024, 11:59 pm CST :**

   a. The following subscriber and extended subscriber information about the customers or subscribers of the Accounts:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

 b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Accounts, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

  ii. information regarding the cell towers and sectors through which the communications were sent and received; and

  iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, NELOS or similar)

**II. Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 1951(a) and 2113(a), involving known and unknown persons during the period from August 1, 2024, beginning at 12:00 am CST through August 22, 2024, 11:59 pm CST.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.